IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE SCHULLER,           )
                                )
               Plaintiff,      )
                                )
     v.                      )      Case No. 25-2373-JWL
                                )
COMPASS MINERALS         )
   INTERNATIONAL, INC. and   )
THE COMPENSATION COMMITTEE OF  )
   THE BOARD OF DIRECTORS AS   )
   ADMINISTRATOR OF THE PLAN,   )
                                )
              Defendants.    )
                                )
_____)

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on defendants' motion to compel arbitration (Doc. # 11). For the reasons set forth below, the motion is hereby **granted in part and denied in part**. Specifically, the Court grants the motion with respect to Count I of the amended complaint, and litigation of that claim is hereby stayed pending arbitration; but the Court denies the motion with respect to Counts II and III. As directed below, the parties shall submit supplemental briefs regarding defendants' request for a stay of proceedings on Counts II and III.

I.    **Background**

According to the allegations of the first amended complaint, plaintiff began his employment with defendant Compass Minerals International, Inc. ("Compass") in September 2019 as Senior Vice President and Chief Operating Officer.  In 2020, Compass approved an Amended and Restated Executive Severance Plan ("the Plan" or "the Amended Plan"), which was then administered by defendant Compensation Committee of the Board of Directors of Compass ("the Plan Administrator").  The Plan was an employee welfare benefit plan for purposes of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*  Compass terminated plaintiff's employment on February 21, 2024, purportedly for cause.  The Plan Administrator subsequently denied plaintiff's claim for benefits under the Plan.  Plaintiff exhausted his administrative remedies by appealing the denial through the claims procedures adopted in the Plan, but the Plan Administrator denied the appeal.  Plaintiff also filed a claim of age discrimination with the Kansas Commission on Human Rights and the Equal Employment Opportunities Commission and received a notice of his right to sue on that claim.

Plaintiff initiated the present action in July 2025.  By his amended complaint, plaintiff asserts three claims.  In Count I, plaintiff asserts a claim under ERISA, 29 U.S.C. § 1132(a)(1)(B), for benefits under the Plan.  In Count II, plaintiff asserts a claim under ERISA, 29 U.S.C. § 1140, based on his allegation that Compass terminated him unlawfully

to interfere with his rights under the Plan.[1]  In Count III, plaintiff asserts a claim against Compass under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*  Defendants have filed a motion to compel arbitration of all three claims, and that motion is ripe for ruling.

## II.  **Agreement to Arbitrate**

### A.  *Governing Standards*

The Federal Arbitration Act (FAA) provides that an arbitration provision in a written commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *See* 9 U.S.C. § 2. Courts apply state-law principles concerning the validity, revocability, and enforceability of contracts, as long as those state-law principles are generally applicable to all contracts and not only to arbitration agreements.  *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). The parties agree that Kansas law supplies the applicable state-law principles in this case by virtue of the Plan's choice-of-law provision.  If a party disputes the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if there is no genuine issue of material fact regarding the parties' agreement.  *See Hancock v. American Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

---

[1]  In his response to the present motion, plaintiff states that this claim was mistakenly asserted against both defendants, and that he intends to assert the claim only against defendant Compass.  Accordingly, the Court deems Count II as asserted against the Plan Administrator to be abandoned.

### B.    _Hearsay Objection_

As a threshold matter, plaintiff argues that defendants' motion should be denied because it is not entirely supported with admissible evidence.  Plaintiff specifically challenges three exhibits attached to the motion:  Exhibit B, plaintiff's signed consent to the Amended Plan; Exhibit D, the Claims Procedures adopted in the Amended Plan; and Exhibit E, a 2019 offer letter signed by plaintiff.  Although plaintiff states that he is challenging the exhibits as inadmissible hearsay, he appears to be concerned with the lack of foundation and authentication, as the caselaw cited by him involves those requirements and the issue of whether proffered documents are what they are purported to be.

The Court rejects this argument for denial of the motion.  Plaintiff does not actually dispute that the documents, including his signed consent form, are what they are purported to be.  Moreover, defendants have now submitted an affidavit authenticating the documents.  Finally, plaintiff has not explained how the documents are offered for the truth of the statements therein and thus constitute hearsay.  _See Echo Acceptance Corp. v. Household Retail Servs., Inc._, 267 F.3d 1068, 1087-88 (10th Cir. 2001) (if the significance of the statement lies in the fact that it was made, then there is no issue concerning the truth of the matter asserted, and the statement is not hearsay; thus, a statement constituting an offer or acceptance that led to a contract is not hearsay) (citing Fed. R. Evid. 801 adv. cmtee. note 1).[2]

---

[2]  Nor has plaintiff explained why the documents would not be admissible under the business records exception to the hearsay rule.  _See_ Fed. R. Evid. 803(6).

C.   _Evidence of Assent to the Claims Procedures_

Plaintiff argues that defendants have failed to submit evidence of his assent to the original severance plan.  The original plan does not appear to be relevant to plaintiff's claim under the Amended Plan or to defendants' argument for arbitration under the terms of the Amended Plan, however.  Plaintiff has not explained why such evidence is required for defendants to prevail on the present motion, and the Court therefore rejects this argument.

Plaintiff also argues that defendants have not shown that he consented to the Claims Procedures that contain the arbitration clause on which defendants rely because his consent form, by which he consented to the Amended Plan, does not itself reference the Claims Procedures.  The Court rejects this argument as well, as plaintiff has not explained why he could not have consented to procedures that are incorporated by reference into the Amended Plan.  *See Holmes v. Colorado Coalition for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1200-01 (10th Cir. 2014) (terms not contained within a plan but which are authorized by or reflected in a plan are enforceable).  In this case, the Amended Plan clearly incorporates the Claims Procedures by reference, and plaintiff's consent to the Plan may therefore be enforced with respect to the Claims Procedures.  Plaintiff has not cited any law requiring a written assent to contract terms (such as by a consent form) to restate every term in the contract, including those incorporated by reference.[3]

---

[3]   Thus, for instance, the evidence of a person's consent to an agreement that contained a term requiring compliance with applicable laws would not be required to include a restatement of all such laws.

D.     *Claim of Lack of Assent Based on Conflicting Language*

Plaintiff next argues that a conflict between a forum-selection clause in the Amended Plan and the arbitration clause in the Claims Procedures demonstrates his lack of assent to the arbitration clause.  The arbitration clause at issue, found in Section 8 of the Claims Procedures, provides as follows:

> **Arbitration.**  Subject to Section 5 of these Claims Procedures [requiring the exhaustion of administrative remedies], any and all disputes under the Plan shall be settled by final and binding arbitration in Johnson County, Kansas, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association.

Plaintiff argues that that clause conflicts with a provision in Section 8(f) of the Amended Plan, which provides in relevant part as follows:

> Subject to the Executive Benefits Claims Procedure[s], any action concerning this Plan shall be brought in a court of competent jurisdiction in Johnson County, Kansas, and each party consents to the venue and jurisdiction of such court.

Plaintiff argues that this term, which requires that any action concerning the Plan be brought in a particular court, conflicts with the Claims Procedures provision requiring the arbitration of any dispute under the Plan, and that such a conflict shows that he did not assent to the arbitration term (or, in the parlance of Kansas courts and the Tenth Circuit, that there was no meeting of the minds regarding an agreement to arbitrate).

The Court rejects this argument by plaintiff, as it does not agree that the two provisions are necessarily in conflict.  *See G.W. Van Keppel Co. v. Dobbs Imports, LLC*, 2014 WL 5302974, at *4-6 (D. Kan. Oct. 15, 2014) (rejecting similar argument where arbitration provision and forum-selection clause could be construed in harmony with each

6

other).[4]  To the contrary, the Plan's forum-selection provision specifically states that it is subject to the Claims Procedures, which must therefore prevail.  Plaintiff addresses that introductory language in the forum-selection clause by arguing that it means merely that administrative remedies must be exhausted before disputes are litigated in court.  The Plan provision does not refer only to the exhaustion requirement, however, but rather makes the forum-selection clause subordinate to all provisions in the Claims Procedures.  Moreover, as the court concluded in *G.W. Van Keppel*, the provisions may easily be harmonized by construing the forum-selection clause to be referring to non-arbitrable matters, such as post-arbitration proceedings to confirm or enforce an award.  *See id.*[5]

For the same reason, the Court rejects plaintiff's argument based on alleged conflicts within the Claims Procedures themselves.  Plaintiff relies on Section 5 of the Claims Procedures, which makes exhaustion mandatory for resolving "every claim and dispute arising under the Plan," and which provides that a claimant may not commence "any legal action to recover benefits or to enforce or clarify rights under the Plan" until exhausting the claims procedures.  Plaintiff also cites Section 6 of the Claims Procedures, which sets

---

[4]  This case may therefore be distinguished from the two non-precedential cases cited by plaintiff, each of which involved two separate, conflicting contracts, with no language by which one contract incorporated, referenced, or subjected itself to the other. *Cf. Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 614 (10th Cir. 2014) (unpub. op.); *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798, 801-02 (10th Cir. 2005) (unpub. op.).

[5]  The court in *G.W. Van Keppel* applied Tennessee law in seeking to harmonize all of the applicable contract terms.  *See* 2014 WL 5302974, at *3-4.  Similarly, Kansas law requires, as a cardinal rule of construction, that all provisions be construed together and in harmony with each other.  *See Starr v. Union Pac. R.R. Co.*, 31 Kan. App. 2d 906, 909 (2003).

a limitations period for any "legal action" under the Plan. Plaintiff insists that the term "legal action" in these provisions must refer to court proceedings, and he argues therefore that the provisions indicate that disputes under the Plan are to be litigated in court, in conflict with any provision mandating arbitration of such disputes. Again, however, as in *G.W. Van Keppel*, these provisions are readily harmonized with the arbitration provision by construing Section 5 as requiring exhaustion not only for all disputes under the Plan but also for lawsuits based on non-arbitrable issues; and by construing Section 6 as imposing a limitations period for such lawsuits.[6]

### E.    Claim of Lack of Consideration Based on an Illusory Promise

For his final argument by which he disputes an agreement to arbitrate here, plaintiff contends that consideration is lacking because any promise by defendants to arbitrate was illusory in light of Section 6(b) the Plan, which gave the Administrator the right to amend or terminate the Plan, and which therefore gave the Administrator the right to remove the arbitration provision. In *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002), the Tenth Circuit upheld a district court's denial of a motion to compel arbitration based on such an argument, holding that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *See id.* at 1219. This Court has addressed or applied that holding from *Dumais* in three previous cases. *See Barnes v. Securitas Security Systems USA, Inc.*, 2006 WL 42233, at *2-5 (D.

---

[6] In light of this conclusion, the Court rejects plaintiff's argument that because there are irreconcilable conflicts within the Plan, the provisions are ambiguous, meaning they should be construed against defendants as the drafter of the Plan or construed in accordance with parole evidence.

Kan. Jan. 6, 2006) (Lungstrum, J.) (applying *Dumais* in denying a motion to compel arbitration because the employer's right to terminate or modify the arbitration program rendered its promise to arbitrate illusory); *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1226 (D. Kan. 2007) (Lungstrum, J.) (distinguishing *Dumais* where the employer did not have the right to modify the arbitration agreement); *White v. Four B Corp.*, 2011 WL 4688843, at *3-4 (D. Kan. Oct. 5, 2011) (Lungstrum, J.) (*Dumais* did not apply where the employer did not promise to arbitrate disputes). Defendants argue in response that the promise in this case was not illusory for the purpose of applying *Dumais* because the Administrator's right to modify or terminate the Plan was not "unfettered", as Section 6(b) required the consent of any covered executive already entitled to benefits under the Plan to any modification or termination that would adversely affect the executive's rights.

The Court declines to apply *Dumais* in this case, however, in light of the Tenth Circuit's more recent opinion in *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195 (10th Cir. 2016). In *Cox*, the plaintiffs argued that because the parties' agreement allowed the defendant to modify it at any time (meaning the defendant could unilaterally modify the agreement's arbitration clause), the defendant's promise to arbitrate was illusory and the arbitration clause was therefore unenforceable. *See id.* at 1209. The Tenth Circuit held that although the plaintiffs might have been correct in that argument, the issue was one for the arbitrator, not the courts. *See id.* The court explained that the Supreme Court had held in its *Prima Paint* decision (regarding a claim of fraud in the inducement of the agreement) and had confirmed in its *Buckeye* decision (regarding an issue of illegality of contract) that "the arbitrator, not a court, should

9

determine whether a contract including an arbitration provision is enforceable." *See id.* at 1210-11 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)).  The Tenth Circuit in *Cox* then concluded that because the illusory-promise argument was based on a right to modify that was found outside the agreement's arbitration language and that applied to the agreement as a whole and not merely to the arbitration provision, the plaintiffs were effectively challenging the enforceability of the entire agreement and not merely that of the arbitration provision, as "the arbitration provision would be unenforceable only if the entire agreement is unenforceable." *See id.* at 1211.

The Tenth Circuit went on to note that, under prevailing contract law, the plaintiffs' illusory-promise argument cannot be made on a provision-by-provision basis, as "a contract may be supported by adequate consideration, and hence be enforceable, even if one of the promises by a party is illusory." *See id.* at 1209, 1211 (citing, *inter alia*, Restatement (Second) of Contracts §§ 77 cmt. a, 80(1), 80 cmt. a).  "In particular, where the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well." *See id.* at 1211 (citation and internal quotations omitted).  The court applied that general contract law after concluding that neither the law of Arizona and nor the law of Louisiana (which states' law applied in the two cases before it) contradicted it.  *See id.* at 1209-10, 1212-14.

Finally, the *Cox* court noted that the Tenth Circuit had previously addressed and resolved "whether an arbitration agreement was unenforceable because one party's promise was illusory" in *Dumais* and in the subsequent case of *Hardin v. First Cash*

10

*Financial Services, Inc.*, 465 F.3d 470 (10th Cir. 2006), in which the court had recognized the holding of *Dumais* but held that the promise in its case was not illusory. *See Cox*, 835 F.3d at 1212. The court distinguished *Hardin*, however, as a case that seemingly involved only a distinct contract to arbitrate, which meant that the *Hardin* court's decision to resolve the issue was consistent with the Supreme Court's *Prima Paint* opinion. *See id.* The Tenth Circuit further noted that in neither *Dumais* nor *Hardin* had the court addressed or even cited the Supreme Court's opinions in *Prima Paint* and *Buckeye*, and it thus concluded that *Dumais* and *Hardin* did not constitute binding precedent with respect to the issue, leaving the court free to follow the "clear commands of the Supreme Court" that required that the illusoriness argument be reserved for the arbitrator. *See id.*

The Court concludes that the same result is appropriate here. In this case, the modification provision cited by plaintiff is stated in the Plan itself, not in the Claims Procedures that contain the arbitration clause; and it applies to modification or termination of the Plan generally, not to the arbitration provision specifically. Thus plaintiff's challenge is effectively to the enforceability of the entire Plan, not merely to the arbitration provision. The Court agrees with the statement by the Tenth Circuit in *Cox* of prevailing contract law, under which the fact that one provision may be illusory does not render unenforceable the entire contract, which may be supported by other promises (such as, in this case, the promises to provide severance benefits). The parties (who did not address *Cox* in their briefs) have not identified any specific Kansas law that contradicts this general law applied by the Tenth Circuit in *Cox*; nor has the Court located any such Kansas

authority.[7]  Thus, under the *Cox* court's interpretation of governing Supreme Court precedent, such a challenge to the enforceability of the entire contract based on a right to modify that contract, including an allegedly illusory promise to arbitrate, can only be raised in the arbitration, and thus cannot provide a basis to deny the motion to compel arbitration.[8] The Court therefore follows the mandate of the Tenth Circuit as stated in *Cox* in declining to apply *Dumais* here.[9]

Accordingly, the Court concludes as a matter of law that the parties did agree to the arbitration provision found at Section 8 of the Claims Procedures that were incorporated into the Amended Plan.

### III.    Scope of the Arbitration Clause

The Court next turns to the issue of the scope of the arbitration clause, which by its terms mandates arbitration of "any and all disputes under the Plan."  Plaintiff does not dispute that his claim in Count I for benefits under the Plan falls within the scope of the

---

[7]  Kansas courts would likely follow the general law concerning illusory promises and consideration as set forth in the Restatement, as discussed in *Cox.  See, e.g., CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 678-79 (2001) (citing a case relying on the Restatement in following "hornbook law" concerning illusory promises).

[8]  Plaintiff may choose not to pursue this challenge to the enforceability of the Plan in arbitration, as his claim for benefits arises directly under that contract.

[9]  The Court notes that the cases in which it considered or applied *Dumais* were decided well before the Tenth Circuit issued its opinion in *Cox.*  The Court also notes that in *Watson v. EnableUtah*, 787 F. Supp. 3d 1245 (D. Utah June 9, 2025), a district court effectively concluded that *Cox* had been wrongly decided and thus chose to follow *Dumais* over *Cox.  See id.*  This Court is not persuaded to do the same in this case, as the Court is obliged to follow the Tenth Circuit's interpretation and application of Supreme Court authority, including *Prima Paint.*

arbitration provision.  Accordingly, the Court grants the motion to compel arbitration as it relates to that claim, and it stays litigation of Count I in this action pending the outcome of the arbitration.  *See* 9 U.S.C. § 3.

Plaintiff does dispute that his other claims – his claim in Count II under ERISA and his claim in Count III under the ADEA – fall within the scope of the arbitration provision. Plaintiff argues that, applying the plain meaning of the provision, Counts II and III are claims "under" those statutes and not "under" the Plan.  The Court agrees.

First, the Court declines to apply any sort of presumption in favor of arbitrability here.  The parties have noted that the Tenth Circuit adopted a three-part test in *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258 (10th Cir. 2005), for determining whether a dispute falls within the scope of an arbitration clause.  *See id.* at 1261.  Under that test, a court first classifies the particular arbitration clause as broad or narrow; if the clause is narrow, the court determines whether the dispute on its face falls within the scope of the clause or instead is a collateral issue somehow connected with the main agreement, which issue generally falls outside the scope of the clause; and if the clause is a broad one, a presumption of arbitrability arises, and even a collateral matter will be deemed to fall within the scope of the clause.  *See id.* (adopting the test from the Second Circuit) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).  Defendants argue that the Court should find the clause here to be a broad one, even though it is limited to disputes "under" the Plan and, unlike other clauses deemed broad by courts under this test, does not also apply to disputes "relating to" or "in connection with" or "concerning" the Plan.  *See, e.g.*, *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184

(10th Cir. 2000) (clause before it was the "very definition of a broad arbitration clause" because it covered not only issues "arising under" the contract but also issues with any "connection" to the contract).[10]

The Supreme Court effectively overruled that test, however, by its opinion in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), in which the Supreme Court confirmed that a presumption of arbitrability applies only if the arbitration agreement is ambiguous about whether it covers the dispute at hand. *See id.* at 301.[11] Thus, the presumption does not arise merely because the clause at issue is a broad one; rather, a court must first find the clause to be ambiguous to apply the presumption.[12]

The Court does not find the arbitration clause in this case to be ambiguous regarding whether it applies to Count II or Count III, and it thus does not apply a presumption in

---

[10] Thus, even if the Court did apply the *Cummings* test here, it would find that the Amended Plan's arbitration clause is not a broad one, and it would reach the same conclusion that Counts II and III do not fall within the scope of the clause.

[11] The Supreme Court also described the subject arbitration provision, which applied only to disputes "arising under" an agreement, as having a "relatively narrow" scope. *See Granite Rock*, 561 U.S. at 307.

[12] In a case decided only last week, the Tenth Circuit conceded that the Supreme Court's decision in *Granite Rock* calls into question the validity of the *Cummings* test, although it did not need to decide the issue or resolve any such conflict in that case. *See Vaughn v. JP Morgan Chase & Co.*, __ F.4th __, 2025 WL 3514012, at *4 (10th Cir. Dec. 8, 2025). The Tenth Circuit noted that in several cases it had applied the *Granite Rock* test in lieu of and without even mentioning the *Cummings* test. *See id.* (citing cases). The Tenth Circuit further noted that the Second Circuit, from which the Tenth Circuit had adopted the *Cummings* test verbatim, has explained that that test is no longer good law in light of *Granite Rock*. *See id.* (citing *Local Union 97, International Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023) (per curiam)). Finally, one member of the panel in *Vaughn* stated that the Supreme Court in *Granite Rock* had "indisputably and pellucidly abrogated" the *Cummings* test regarding a presumption of arbitrability. *See id.* at *10-11 (Bacharach, J., concurring in part and dissenting in part).

favor of arbitration. The clause requires arbitration only for dispute "under" the Plan, and the word "under" in this legal context is generally understood to mean "authorized by" or "pursuant to." *See, e.g.*, Black's Law Dictionary (12th ed. 2024) (citing *National Ass'n of Mfrs. v. Department of Defense*, 583 U.S. 109, 124 (2018)). Count I for benefits is a claim "under" the Plan because the Plan itself is the source of the rights that plaintiff seeks to enforce. Defendants argue that Counts II and III are related to the Plan because both may be affected by whether plaintiff's termination is deemed to have been properly for cause as defined by the Plan. By those counts, however, plaintiff seeks to vindicate rights granted by particular statutes, ERISA and ADEA respectively, and therefore – applying the ordinary meaning of the word – those claims arise "under" the statutes and not "under" the Plan. *See Wilson v. Olathe Bank*, 1998 WL 596739, at *1-2 (D. Kan. July 31, 1998) (in ruling that the plaintiff's statutory and tort claims did not fall within the scope of an arbitration agreement, noting that "[c]ourts have held that extra-contractual claims are not barred by narrow arbitration clauses referring only do disputes 'arising under' an agreement").

The clause at issue here does not include language encompassing disputes merely relating to the Plan, but instead is limited to disputes "under" the Plan. Thus, the Court concludes that the clause unambiguously covers Count I but does not cover Counts II and III of the amended complaint. Accordingly, the Court denies defendants' motion as it applies to Counts II and III.

**IV.**    <u>**Stay Pending Arbitration**</u>

Because the Court grants the motion to compel arbitration as it relates to Count I, litigation of that claim in this action is hereby stayed pursuant to the FAA, as stated above. In their reply brief, defendants argue that if the Court finds only Count I to be subject to arbitration, it should nevertheless also stay litigation of Counts II and III, either because the resolution of Count I could be determinative of the other counts or because Count I predominates and is inextricably intertwined with the other counts. Plaintiff has not had the opportunity to respond to this specific argument. Accordingly, the Court will allow each side to file a supplemental brief addressing the argument before it rules on the request to stay litigation of Counts II and III. Plaintiff shall file a supplemental response brief (or indicate its agreement to such a stay) on or before **December 30, 2025**; and defendants may then file a supplemental reply brief as appropriate on or before **January 13, 2026**.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to compel arbitration (Doc. # 11) is hereby **granted in part and denied in part**. The motion is granted with respect to Count I of the amended complaint, and litigation of that claim is hereby stayed pending arbitration; the motion is denied with respect to Counts II and III.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff shall file a supplemental response addressing defendants' request for a stay of proceedings on Counts II and III on or before **December 30, 2025**; and defendants may then file a supplemental reply on that issue on or before **January 13, 2026**.

IT IS SO ORDERED.

Dated this 16th day of December, 2025, in Kansas City, Kansas.

/s/   John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge